**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| In re:<br><br>DAVID A. MARRON AND ROBIN H.<br>SOROKO-MARRON<br><br>            Debtors<br><br>DAVID M. NICKLESS, TRUSTEE<br><br>            Plaintiff<br><br>v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION, AS INDENTURE<br>TRUSTEE OF THE FIELDSTONE<br>MORTGAGE INVESTMENT TRUST,<br>SERIES 2005-2, MORTGAGE<br>ELECTRONIC REGISTRATION<br>SYSTEMS, INC., U.S. BANCORP, AND<br>U.S. BANK TRUST COMPANY,<br>NATIONAL ASSOCIATION<br><br>            Defendants | Chapter 7<br>Case No. 10-45395-MSH<br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 11-4028 |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS**

      The defendants have moved to dismiss the chapter 7 trustee's seven count complaint in this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. In his complaint the trustee seeks avoidance or subordination of (i) a mortgage originally given by the co-debtor Robin H. Soroko-Marron to the defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fieldstone Mortgage Company ("Fieldstone") and Fieldstone's successors and assigns, (ii) a confirmatory mortgage from both debtors to HSBC Bank USA, N.A. ("HSBC"), as nominee of Fieldstone,

and (iii) a second mortgage given by the debtor Robin H. Soroko-Marron to the defendant MERS, as nominee for Fieldstone.[1]

## Facts

The transactions (not to mention many of the issues) which form the basis of this adversary proceeding have been the subject of two prior decisions in the main case, *In re Marron*, 455 B.R. 1 (Bankr. D. Mass. 2011) ("*Marron I*") and *In re Marron,* 2011 WL 3800040 (Bankr. D. Mass. Aug. 29, 2011) ("*Marron II*").[2] Many of the facts relevant to this action are summarized in *Marron I* and *II*. Those facts along with additional details relevant to the issues now before me are set forth below. Except for certain inferences which in a motion to dismiss must be drawn in favor of the plaintiff, the facts are largely uncontested.

On July 29, 2005, co-debtor, Robin H. Soroko-Marron, executed an adjustable rate promissory note (the "First Note") in the amount of $316,000 payable to Fieldstone to purchase property located at 25 Mears Farm Road, Haverhill, Massachusetts (the "Property").  To secure her obligation she granted MERS, as nominee for Fieldstone and its successors and assigns, a first mortgage (the "First Mortgage") on the Property.  The First Mortgage was duly recorded at

---

[1] Even though it is left unsaid, the trustee's capacity to avoid the second mortgage depends on his ability to avoid the first. If the first mortgage survives the trustee's attack, its foreclosure will wipe out the second. Since I conclude that the first mortgage does survive there is no need to further address the validity of the second mortgage in this decision.

[2] Initially, the trustee opposed HSBC's motion for relief from stay, raising many of the same arguments he asserts in this adversary proceeding.  I granted HSBC's motion, *Marron I*, and the trustee then sought reconsideration of my order arguing that I erred in failing to (i) require that a mortgagee must also hold the underlying note in order to commence foreclosure proceedings, (ii) consider Fieldstone's rejection of its contract with MERSCORP during Fieldstone's bankruptcy as an impediment to MERS' ability to assign the mortgage, and (iii) hold the assignments invalid.  *Marron II*.  As noted in my decision in *Marron II*, based on *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 31-32 (1st Cir. 1994) the analysis of these arguments in the context of a motion for stay relief required a determination whether HSBC had a colorable claim to the collateral.  The complaint in this adversary proceeding, however, must be analyzed under the standard applicable to a motion to dismiss.

the Essex County Registry of Deeds. On the same date Ms. Soroko-Marron also granted MERS, again as nominee for Fieldstone and its successors and assigns, a second mortgage on the Property to secure her obligation under a $79,000 promissory note also payable to Fieldstone. The second mortgage was also recorded in the Essex County Registry of Deeds. At the time of the mortgage transactions, title to the Property stood in the names of both Mr. Marron and Ms. Soroko-Marron as tenants by the entirety.

On April 14, 2009 MERS executed an assignment of the First Mortgage "and the note and claim secured thereby" to HSBC, as Indenture Trustee of the Fieldstone Mortgage Investment Trust 2005-2. The assignment was recorded in the Essex County Registry of Deeds on May 29, 2009.

Ms. Soroko-Marron defaulted on the First Note and when HSBC began the collection process, it discovered that title to the Property was held by both Mr. Marron and Ms. Soroko-Marron while only Ms. Soroko-Marron had granted the First Mortgage. Consequently, on July 8, 2009 HSBC filed an action in the Land Court Department of the Trial Court of the Commonwealth of Massachusetts for Essex County seeking to reform the deed on the Property to reflect that Ms. Soroko-Marron was the sole owner or, alternatively, to reform the First Mortgage to add Mr. Marron as a mortgagor. HSBC and the Marrons settled the Land Court litigation with the Mr. and Mrs. Marron agreeing to execute a confirmatory mortgage to HSBC and HSBC agreeing to pay them $10,000 to resolve a counterclaim that the Marrons had raised. Following a report to the Land Court of the settlement, the Marrons sought to repudiate it causing HSBC to seek an order of enforcement. On December 8, 2009, the Land Court entered judgment ordering the enforcement of the settlement subject to the following terms:

> A confirmatory deed is to be drafted by the plaintiff [HSBC], with terms and
> conditions identical to the mortgage of record at the Essex (South) Registry of

> Deeds in Book 24633, Page 55, with only three exceptions: (1) the mortgagors shall be David Marron and Robin Soroko Marron; (2) the mortgagee shall be HSBC Bank USA, N.A. as indenture trustee of the Fieldstone Mortgage Investment Trust, Series 2005-2; and (3) the property description (Ex A. Legal Description) shall include a specific reference to the Marrons' deed by Book and Page;
>
> Defendant David Marron and defendant Robin Soroko Marron shall both sign the confirmatory mortgage as mortgagors no later than seven (7) days from the date of this judgment (i.e., on or before December 15, 2009);
>
> If the Marrons have not both signed the confirmatory mortgage by that date, the plaintiff may sign it for them, noting that such signatures are pursuant to the authority granted by this judgment and record a copy of this judgment to evidence that authority;
>
> Immediately upon receipt of the Marrons' signatures (or, if one or both do not sign, upon signing their names pursuant to the authority granted by this judgment), the plaintiff shall tender $10,000 in good funds to the Marrons with no deductions; and
>
> All other claims and counterclaims are DISMISSED, with prejudice.

By agreement of the parties, on December 10, 2009 the Land Court amended its December 8, 2009 judgment to provide that the confirmatory mortgage name MERS, as nominee for Fieldstone, as the mortgagee.

The Marrons did not sign the confirmatory mortgage and in accordance with the Land Court's order, HSBC's attorney signed it for the Marrons and on December 29, 2009 recorded it in the Essex County Registry of Deeds ( the "Confirmatory Mortgage").  On July 9, 2010 a confirmatory assignment of the First Mortgage, as amended by the Confirmatory Mortgage, from MERS to HSBC (the "Confirmatory Assignment") was recorded in the registry.

In March 2007, some two years after the Soroko-Marron loans, Fieldstone Investment Corporation ("FIC"), Fieldstone's parent company, merged with Credit-Based Asset Servicing and Securitization LLC ("C-Bass").  On November 23, 2007, Fieldstone filed a bankruptcy petition under chapter 11 of the Bankruptcy Code in the bankruptcy court for the district of

4

Maryland. During its bankruptcy Fieldstone moved to reject certain of its executory contracts, including its agreement with MERSCORP, the parent corporation of MERS. Fieldstone's rejection motion was approved by the bankruptcy court on June 3, 2008 retroactive to February 11, 2008, a date which preceded MERS' execution of the original assignment to HSBC of the First Mortgage in April 2009.

On October 29, 2010 the Marrons filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*, commencing the main case and David M. Nickless, the plaintiff in this adversary proceeding, was appointed trustee.

On November 12, 2010 C-Bass filed a bankruptcy petition in the bankruptcy court for the southern district of New York. On the same day, it filed a motion to abandon certain assets, including an asset described as "Fieldstone Mortgage Investment Trust, Series 2005-2," to the "Owner/Trustee" identified in the attachment to the motion as U.S. Bank Trust Company, National Association. C-Bass's rejection motion was allowed on December 20, 2010.

In HSBC's motion for relief from stay, filed in the Marrons' main case on December 6, 2010, while the C-Bass abandonment motion was pending, HSBC identified itself as the Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2005-2.[3] The chapter 7 trustee notes that C-Bass filed a list of assets in its chapter 11 case as Schedule B-17 entitled "Other Negotiable and Non-negotiable Instruments" which identifies one of C-Bass's assets as "FMIC 2005-2 (ALL) M 10," located at U.S. Bank National Association. The trustee has not alleged that FMIC 2005-2 (ALL) M 10 and the Fieldstone Mortgage Investment Trust, Series 2005-2, refer to the same asset.

---

[3] I may take judicial notice of the docket and pleadings in the debtors' main case pending before me. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999).

5

On March 9, 2011 the trustee commenced this adversary proceeding claiming that the First Mortgage and the Confirmatory Mortgage are invalid and that, at best, the First Note is unsecured. Alternatively, he seeks, to subordinate the First Mortgage on the Property to the claims of all creditors while preserving the lien for the benefit of the estate. The defendants joined in a single motion to dismiss the complaint.[4]

**The Dispute**

The trustee seeks a declaration that the First Mortgage and the Confirmatory Mortgage are invalid because (i) Fieldstone did not accept them (Count I), (ii) Fieldstone's rejection of its contract with MERSCORP eliminated MERS' right to assign mortgages (Count II), (iii) restrictions on MERS's rights of alienation prohibit MERS from transferring its interest in mortgages without a license by a court (Count III) and (iv) the trustee's strong-arm powers under Bankruptcy Code § 544 allow him to avoid the First Mortgage (Count IV). Alleging that the execution of the Assignment and Confirmatory Assignment were inequitable in light of Fieldstone's rejection in its own bankruptcy of the MERSCORP contract, the trustee seeks subordination of the First Mortgage and the Confirmatory Mortgage under Bankruptcy Code § 510(c)(1) and (2) (Count V) while also seeking to have the settlement agreement, judgment and amended judgment in the Land Court action declared void as having violated the automatic stay in effect as a result of Fieldstone's bankruptcy case (Count VI). Finally, the trustee asserts that HSBC is not the holder of the First Note as it has produced only a copy endorsed in blank (Count

---

[4] Although the defendants answered the complaint prior to moving for dismissal under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, they raised the failure of the complaint to state a claim upon which relief may be granted as an affirmative defense. This affirmative defense saves the motion from being barred by the rule's general requirement that a motion under Rule 12(b)(6) must be made before a responsive pleading is filed. *Gerakaris v. Champagne*, 913 F. Supp.2d 646, 650-51 (D. Mass. 1996).

6

VII).[5]

The defendants seek dismissal of the complaint primarily on the grounds that the trustee lacks standing to pursue the first three counts of the complaint, that he cannot use his strong-arm powers because all of the mortgage instruments at issue were validly recorded prior to the commencement of the Marrons' bankruptcy case, that the recording and assignment of the First Mortgage and Confirmatory Mortgage did not violate the automatic stay in either the Fieldstone or C-Bass bankruptcies, and that HSBC as the holder of the First Note is entitled to seek payment thereof.

## Discussion

Motion to Dismiss

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. In deciding a motion to dismiss "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). To avoid dismissal of a claim under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).[6] It is not enough to speculate as to the facts or simply allege the elements

---

[5] Count VII is misnumbered in the complaint as a second Count VI.

[6] At oral argument the trustee's counsel contended that in the First Circuit one of the factors to be considered in determining a motion to dismiss is whether the defendants have proven beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. To the extent federal courts have interpreted *Conley v. Gibson*, 355 U.S. 41, 45-46, 76 S.Ct. 99, 102 (1957) as standing for the proposition that the proponent of a motion to dismiss must show that "the plaintiff could prove no set of facts in support of his claim which would entitle him to relief,"

7

of a claim. *Id.* The court is "not bound to accept legal conclusions couched in fact." *In re DiVittorio*, 430 B.R. 26, 44 (Bankr. D. Mass. 2010). Nor should a court give credence to any "fact" which has been "conclusively contradicted by plaintiffs' concessions or otherwise." *Chongris v. Bd. of Appeals of Town of Andover*, 811 F.2d 36, 37 (1st Cir. 1987).

When deciding a motion to dismiss, a court "is generally limited to considering facts and documents that are part of or incorporated into the complaint." *Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008). "A court may also consider a limited universe of materials not included in or attached to the complaint, such as documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *In re Bailey,* 437 B.R. 721, 727 (Bankr. D. Mass. 2010) (internal citations and quotation marks omitted). Although both the plaintiff and the defendants attached additional documents to the motion to dismiss and opposition, respectively, those attachments do not require abandoning the Rule 12(b)(6) standard in favor of the one for summary judgment. The additional documents were primarily copies of documents already attached to the complaint and published decisions by other courts. Neither category compels the conversion of the defendants' motion to dismiss to one for summary judgment. *Watterson*, 987 F.2d at 3-4. Similarly, the attachment to the motion to dismiss of the complaint and answer in the Land Court suit does not require treating the motion to dismiss as one for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (documents from prior state court proceedings are public records that do not require conversion of motion to dismiss to one for summary judgment).

---

*Conley* must be deemed modified by *Twombley* and *Iqbal* to establish the standard as "a plausible entitlement to relief." *Twombley,* 550 U.S. at 556, 127 S.Ct. 1967. *See Rodriguez-Ortiz v. Margo Caribe, Inc*., 490 F.3d 92, 95 -96 (1st Cir. 2007).

Count I - Acceptance of the First Mortgage

Count I (as well as counts II, III and VI) of the trustee's complaint is entitled "Declaratory Judgment." Declaratory judgment "is a procedural device and not a cause of action unto itself." *In re Downingtown Indus. & Agr. School*, 172 B.R. 813, 823 (Bankr. E.D.Pa. 1994). In his prayer for relief in count I the trustee seeks a determination that the First Note is unsecured. He bases his prayer on Bankruptcy Code § 506(d). Section 506(d) works in conjunction with § 502(a) to permit in certain instances the disallowance of secured claims to the extent they exceed the value of the creditor's interest in the estate's interest in the collateral. Of course, any attempt by a debtor, and by extension his trustee, to "strip down" a lien to the value of the collateral in a chapter 7 case is impermissible. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Here, the trustee is not really attempting to strip down the lien of the First Mortgage to the value of the Property. Rather, at the crux of count I are the allegations that the First Mortgage failed to identify Fieldstone as a grantee and that Fieldstone never accepted the Mortgage. The trustee points out that under Massachusetts law a grantee must be identified and must accept the deed in order for a transfer of title to be effective. Because Massachusetts subscribes to the title theory of mortgages and thus a mortgage is a transfer of title, the trustee argues that the First Mortgage and Confirmatory Mortgage are invalid because Fieldstone is not named as the grantee and never accepted them.

The trustee's focus is too narrow. The First Mortgage absolutely identifies a grantee, MERS acting as Fieldstone's nominee. And it is MERS, not Fieldstone, which, if acceptance was necessary, would have been charged with this responsibility.[7] It is not at all clear, however, that

---

[7] If Fieldstone's acceptance is the one to which the trustee refers, his argument fails. The First

9

under Massachusetts law a mortgagee must affirmatively accept a mortgage for it to be valid. The purpose behind the requirement for grantee acceptance is to prevent property from being "thrust…onto the grantee against his or her will, even if the conveyance is gratuitous." 6A POWELL ON REAL PROPERTY ¶ 898[2] at pp 81A-77 (1993). The burdens associated with property ownership make the precondition of acceptance a simple and practical device for avoiding all sorts of mischief in land transfers. Mortgage transactions, although technically title transfers, do not give rise to the concerns which are at the heart of the acceptance requirement. The trustee has not cited nor have I found any legal authority in Massachusetts requiring a mortgagee's affirmative acceptance of a mortgage. But even if acceptance is required, it may be presumed by the conduct of the transferee. *Juchno v. Toton*, 338 Mass. 309, 155 N.E.2d 162, 164 (Mass. 1959). In *Juchno* the acceptance of a deed was implied by the transferees' granting a mortgage on the property a year after acquiring it. Here, MERS' acceptance of the First Mortgage is implied by the recording of the First Mortgage by its member and nominor, Fieldstone, and then later by MERS' assigning it to HSBC. As to the Confirmatory Mortgage there can be no doubt that MERS' assignee, HSBC, accepted it; HSBC's attorney signed it for the Marrons when they refused to do so.

The trustee having failed to state a claim in count I for invalidating the First Mortgage or the Confirmatory Mortgage, the motion to dismiss will be allowed as to count I of the complaint.

Count II - Fieldstone's Rejection of Its MERSCORP Contract

Count II, also entitled Declaratory Judgment, appears to offer two related arguments:

---

Mortgage recorded in the Essex county Registry of Deeds indicates that it was prepared by "Kristen Heller, Fieldstone Mortgage Corporation" and that a copy of the recorded mortgage was to be returned to Fieldstone.

10

first, that Fieldstone's rejection in its own bankruptcy of its MERSCORP contract terminated MERS's right to assign the First Mortgage and second, that the assignment of "bare legal title" (which I take to be a reference to the trustee's position that under Massachusetts law a mortgagee must hold both legal title and the beneficial interest of the noteholder in a mortgage ) conveys nothing. These issues were addressed at length in *Marron I* and *Marron II*. First, assuming that the rejection of a contract with MERSCORP is the equivalent of rejecting a contract with MERS,

> [t]he trustee appears to assume that Fieldstone's rejection of its MERS contract had the effect of terminating the agreement. Rejection of a contract under 11 U.S.C. § 365(g), however, has the same effect as the breach of that contract, but does not "cause a contract magically to vanish." *Sir Speedy, Inc. v. Morse,* 256 B.R. 657, 659 (D. Mass.2000). Without evidence that Fieldstone's MERSCORP agreement was actually terminated, the trustee cannot assert that Fieldstone was no longer a MERS member at the time the mortgage on the debtor's home was first assigned from MERS to HSBC.

*Marron II*, 2011 WL 3800040, at *3, n.1. Moreover, the assignments of the First Mortgage and the Confirmatory Mortgage are facially valid. As has been recognized by several courts, including this one,

> an assignment of a mortgage executed before a notary public by one purporting to be an officer of a corporate mortgagee is binding as against the assigning mortgagee. The statute vitiates the trustee's argument that if Fieldstone continued to hold the promissory note underlying the mortgage after it had rejected its MERSCORP agreement then Fieldstone would not have been able to direct MERS to assign the mortgage to HSBC. Under Mass. Gen. Laws ch. 183, § 54B, the assignments would be binding upon MERS in any event.

*Id. See also Rosa v. Mortgage Electronic Registration Systems, Inc.*, — F.Supp.2d —, 2011 WL 5223349, at *5 (D. Mass. Sept. 29, 2011) ("The dissolution of the original lender does not affect MERS' authority to assign a mortgage."); *Kiah v. Aurora Loan Services,*LLC, 2011 WL 841282, at *4 (D. Mass. March 4, 2011) ("[T]he dissolution of First Magnus would not and could not prevent Aurora from obtaining an assignment of the mortgage from MERS, both as a matter of law and according to the arrangement that existed between MERS and Aurora as a "successor

11

and assign" of First Magnus."). Additionally, the assignments of the First Mortgage and Confirmatory Mortgage conveyed interests only between the assignor, MERS, and the assignee, HSBC. They conveyed no interest or property right which could conceivably constitute property of the Marrons' bankruptcy estate and thus, the trustee lacks standing to challenge the validity of the assignment of these instruments. *In re Richard*, 2011 WL 5041758, at *3 (Bankr. D. Mass. October 24, 2011).

The trustee's second argument appears to reprise his previous urgings that I repent from my holding that under Massachusetts law a mortgagee may foreclose a mortgage without also having the right to enforce the underlying note. Although courts are divided on this issue,[8] I

---

[8] *Compare Culhane v. Aurora Loan Services of Nebraska*, 2011 WL 5925525 at *12 (D. Mass. Nov. 28, 2011) (Young, J.) ("[U]nless the Supreme Judicial Court decides otherwise . . . this Court . . . reads the law as requiring a mortgagee to possess the legal title to the mortgage *and* either hold the note or establish that it is servicing the loan on behalf of the note holder."); *Adamson v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 4985490 at *7 (Mass. Super. Oct. 19, 2011) (Brassard, J.) ("While it is conceded that the question of whether Massachusetts law requires a party to hold both the mortgage and the note to foreclose under the power of sale is close, this court reads the law as requiring a mortgagee to either hold both the mortgage and the note or establish that it is acting at the behest of the holder of the note."); *Eaton v. Federal Nat. Mortg. Ass'n*, 29 Mass. L. Rptr. 115, 2011 WL 6379284, *2 (Mass. Super. June 17, 2011) (McIntrye, J.) (appeal under advisement at SCJ 11041) ("Under the common law, both mortgage and mortgage note must be held by the foreclosing entity to validly foreclose.") *with Doust v. Wells Fargo Bank, N.A.*, No 10-1882, slip op. (1st Cir. Oct 31, 2011) (*judgment available at* ECF "Orders/Judgments" ("Yet [i]n Massachusetts, a foreclosing entity must be the current record mortgagee and holder of the mortgage; it need not be the note holder.") (internal citations and quotation marks omitted); *Juarez v. U.S. Bank Nat. Ass'n ex rel. Holders of the Asset Backed Securities Corp. Home Equity Loan Trust, Series NC 2005-HE8,* 2011 WL 5330465 at *5 (D. Mass. Nov. 4, 2011) (Casper, J.) ("In Massachusetts, the foreclosing entity must hold the mortgage only, not both the mortgage and the note."); *Rosa v. Mortgage Electronic Systems, Inc.*, —F. Supp.2d —, 2011 WL 5223349, * 6 (D.Mass. Sept. 29, 2011) (Saris, J.) (adopting Report and Recommendation of Collins, M.J.) ("Possession of the note is not required for foreclosures in Massachusetts."); *Archambault v. Aurora Loan Serv., LLC*, 2011 WL 4062379, at *1 (D. Mass. Sept. 13, 2011) (Stearns, J.) (In Massachusetts, a foreclosing entity must be the current record mortgagee and holder of the mortgage; it need not be the note holder") citing his prior decision *Kelly v. Deutsche Bank Nat'l Trust Co.*, 789 F. Supp. 2d 262, 2011 WL 2262915, at *3 (D. Mass. June 9, 2011); *McKenna v. Wells Fargo Bank*, *N.A.*, 2011 WL 1100160, 2 (D.Mass.) (D.Mass. March 21, 2011) (Tauro, J.) ("Under Massachusetts law, the

continue to believe the correct view is that under Massachusetts law an entity need hold only the mortgage and not necessarily the note in order to commence foreclosure proceedings. The Massachusetts Supreme Judicial Court has under advisement the appeal in *Eaton* which promises to resolve this issue once and for all.[9] But even those courts which rule that Massachusetts law requires both the note and mortgage to be held by a foreclosing entity have not gone so far as to suggest that holding the note is a prerequisite to a valid mortgage assignment. In light of the SJC's landmark ruling in *U.S. Bank National Association v. Ibanez*, 458 Mass.637, 941 N.E.2d 40 (2011), there can be no doubt that a mortgagee who does not hold the note may effectively assign its mortgage. Thus defendants' motion to dismiss will be allowed as to count II of the complaint.

Count III – MERS' Power to Assign

Count III, like counts I and II, is denominated "Declaratory Judgment." The trustee attacks the validity of the First Mortgage assignment and the Confirmatory Assignment asserting that MERS lacked the legal right to unilaterally execute them without a license from a court.

---

current record mortgagee and holder of the mortgage is the proper party to foreclose upon a property. The Massachusetts statute governing foreclosures makes no mention of note holders.") (footnote omitted); *Valerio v. U.S. Bank, N.A.,* 716 F.Supp.2d 124, 128 (D.Mass. 2010) (Gorton, J.) ("The Massachusetts statute governing foreclosure sales is addressed to mortgagees, not note holders. M.G.L. c. 244, § 14."); *Marron II*, 2011 Wl 3800040, at *2; *Marron I*, 455 B.R. at 7 ("Massachusetts law does not require a unity of ownership of a mortgage and its underlying note prior to foreclosure."); *Wells Fargo Bank, N.A. v. McKenna,* 2011 WL 6153419, at *2 (Mass. Land Ct. Dec. 8, 2011) (Piper, J.) ("The correct view of prevailing Massachusetts law is, rather, as set forth in many other trial court orders and decisions, which conclude that our common law does not require, for an effective exercise of a mortgage's power of sale, that the note for which the mortgage is security be at that time held by the mortgage holder.*"). Cf. U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 647 (2011) (statutory power of sale is conferred on "mortgagee").

[9] On October 3, 2011 the SJC heard arguments in *Eaton* and now has the case under advisement. See footnote 8, *supra*.

13

This argument was rejected in *Marron I* :

> As Massachusetts law allows a mortgagee with no interest in the underlying obligation to foreclose, the trustee's argument that MERS did not have a sufficient interest in the debtors' property to foreclose the mortgage fails. Indeed, this is acknowledged explicitly in the debtors' mortgage which states
>
>> MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: [sic] to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.
>
> To the extent MERS held only bare legal title to the mortgage on the debtors' residence in its capacity as trustee for the note owner, MERS was able to assign its interest to HSBC.

*Id.* at 7-8. Furthermore, the First Mortgage assignment and Confirmatory Assignment are facially valid, *Marron II*, 2011 WL 3800040, at *3, n.1, and based on MGL ch 183 §54B courts have repeatedly rejected arguments attacking the authority of MERS to assign mortgages. *Id.* Finally, as in count II, to the extent count III of the complaint seeks to attack MERS' right to assign any of the mortgage instruments at issue in this adversary proceeding, the trustee lacks standing to assert such a claim since an attack on the assignment has no effect on the validity of the underlying mortgage and so the bankruptcy estate receives no benefit from such an attack. *Richard*, 2011 WL 5041758, at *3. For these reasons the motion to dismiss will be allowed as to count III.

Count IV - The Trustee's Strong-Arm Powers

In count IV the trustee seeks to invoke his so-called strong-arm powers found in Bankruptcy Code § 544 to avoid the First Mortgage and Confirmatory Mortgage. The complaint fails to elucidate precisely how the lien may be avoided under § 544 and for this reason alone count IV should be dismissed. It cannot be the trustee's position that on the strength of his argument that the assignments of the First Mortgage and Confirmatory Mortgage from MERS to

14

HSBC are invalid, the First Mortgage itself may be avoided under §544. Even if the assignments were avoidable, which they are not, the underlying Mortgage would remain unaffected (which is, by the way, another example of the trustee's lack of standing). It can only be presumed that the trustee's § 544 avoidance claim is based on the argument that the First Mortgage is invalid because on the Marrons' bankruptcy petition date HSBC held only the First Mortgage but not the First Note. But nothing in Massachusetts law invalidates a mortgage that is not held at all times by the noteholder. Even *Eaton* and its adopters do not go that far. Consequently the motion to dismiss will be allowed as to count IV of the complaint.

Count V- Equitable Subordination

In count V of the complaint the trustee argues that the conduct of MERS and HSBC, including MERS' unauthorized execution of the assignments of the First Mortgage and Confirmatory Mortgage after Fieldstone had rejected its contract with MERSCORP, was "inequitable" and "conferred an unfair advantage" on HSBC. No detail as to the precise nature of the inequitable conduct or unfair advantage is provided.

At oral argument the trustee explained the basis for this count was his belief that both MERS and HSBC were prohibited from conducting business in Massachusetts. According to the trustee, MERS was ineligible because it had failed to file tax returns in the Commonwealth. HSBC's disability, the trustee asserted, stemmed from its status as an indenture trustee and its failure to file a copy of the declaration of trust or other instrument of formation with the Massachusetts Secretary of State.

Assuming that MERS is required to file Massachusetts tax returns and knowingly failed to do so (both assumptions for which there are no allegations in the complaint), the appropriate remedy under Mass. Gen. Laws. Ch. 62C, § 33 is a monetary penalty assessed by the Department

of Revenue. The statute does not prevent, nor does it invest the Commissioner of the Department of Revenue with the authority to prevent, the non-compliant taxpayer from conducting business in the Commonwealth and it certainly does not invalidate contracts to which the tax evader is a party.

Two of the allegations in the complaint deal with HSBC's failure to file a copy of its declaration of trust or other written instrument creating it and annual reports with the Massachusetts Secretary of State. Assuming that HSBC was required to file a declaration of trust or other similar instrument and annual reports with the Secretary of State and assuming that it failed to do so, the result is neither the disqualification of HSBC from doing business nor the undoing of its contracts. Rather Mass. Gen. Laws ch. 182 § 2 imposes a fine or imprisonment on the trustees of such trusts. Similarly the failure to file annual reports results in a penalty of $5 to $10 per day for each day the failure to file the report continues. Only if the Attorney General of the Commonwealth files "an information in equity" with the Massachusetts Supreme Judicial Court seeking monetary penalties and only if the court issues an injunction prohibiting the non-compliant trust from operating its business until the monetary penalties are paid would a trust's ability to conduct business in the Commonwealth be impeded. Mass. Gen. Laws ch. 182, § 14. The chapter 7 trustee has not alleged that such an injunction with respect to HSBC exists and if it did, he is not the party entitled to pursue HSBC for its violation.

For the foregoing reasons the motion to dismiss is allowed as to count V of the complaint.

Count VI – Stay Violation

This is another count entitled "Declaratory Judgment." Count VI alleges that the Land Court's judgment and amended judgment as well as the settlement which gave rise to the

16

judgment are all void as violating the automatic stay in effect as a result of Fieldstone's bankruptcy in Maryland. Under binding First Circuit authority, actions taken in violation of the automatic stay are void. *In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997).

Assuming without deciding that the trustee has standing to assert an alleged violation of the automatic stay in an unrelated bankruptcy case, the Land Court action did not constitute a violation of the automatic stay in Fieldstone's bankruptcy. Bankruptcy Code § 362(a)(3), identified by the trustee as the basis for his claim, provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The Land Court action did not involve any act to obtain possession or control over Fieldstone's property. In fact quite the opposite occurred. The upshot of the Land Court action was to enhance Fieldstone's position by ensuring that Fieldstone's nominee held a mortgage covering not just Ms. Soroko-Marron's interest in the property but her husband's interest as well. Fieldstone was a defendant in the Land Court action in name only. The relief sought by HSBC as plaintiff was entirely in the joint interests of both entities. The motion to dismiss will be allowed as to count VI of the complaint.

Count VII - Unjust Enrichment

The trustee argues in count VII that HSBC is not entitled to enforce the First Note and therefore is not entitled to retain any of the payments it received on account of the Note. Under the Uniform Commercial Code as adopted in Massachusetts, the maker of a note, in this case, Ms. Sorroko-Marron, is obligated to pay "the person entitled to enforce" the note. M.G.L. ch. 106-§3-412. M.G.L. ch. 106 § 3-301 enumerates the entities entitled to enforce a note as follows:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person

17

not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or subsection (d) of section 3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

In turn, the "holder" of a negotiable instrument is "the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." M.G.L. ch 106 § 1–201(20). The "bearer" is "a person in possession of a negotiable instrument, document of title, or certificated security that is payable to bearer or indorsed in blank." M.G.L. ch 106 § 1–201(5).

The trustee does not allege that the First Note is invalid, only that HSBC lacked the right to enforce it. He apparently bases this assertion on the fact that HSBC attached a copy of the First Note endorsed in blank to its motion for relief from stay in the main case. It is unclear how this establishes HSBC's lack of qualification to enforce the First Note. But since the trustee's cause of action is for unjust enrichment it isn't necessary to pursue this avenue of inquiry further. As Judge Boroff explained in *Bailey v. Wells Fargo Bank, N.A. (In re Bailey)*, 437 B.R. 721, 730-31 (Bankr. D. Mass. 2010),

> A claim for unjust enrichment is grounded in the principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution *to the other*." *Nat'l Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co.,* 318 Mass. 142, 61 N.E.2d 18, 20 (1945) (quoting Restatement: Restitution, § 1) (emphasis supplied); "[a] common instance in which restitution is ordered is where money is paid under a mistake of fact, commonly ... under a mutual mistake of fact." *Id.* "The fundamental question ... is whether the defendant has received money which in equity and good conscience *belongs to the plaintiff.*" *Id.* at 22 (emphasis supplied in *Bailey*).

Even if HSBC was not the holder of the Note when payments were made,[10] the claim for unjust enrichment does not belong to the bankruptcy estate but to the party entitled to seek enforcement

---

[10] I note that when questioned at oral argument, counsel for the trustee did not know whether any payments had been made to HSBC, U.S. Bank Trust Company, National Association or U.S. BankCorp or whether HSBC was the servicer of the Note.

18

of the Note, whoever that may be. Once again the trustee has asserted a claim which he lacks standing to pursue. The motion to dismiss will be allowed as to count VII.

U.S. BanCorp and U.S. Bank Trust Company, National Association

The trustee named U.S. BanCorp and U.S. Bank Trust Company, National Association as defendants because C-Bass in its bankruptcy listed U.S. Bank National Association as the location of one of its securities identified as "FMIC 2005-2(ALL) M10" on Schedule B-17 ( the schedule of Other Negotiable and Non-Negotiation Instruments ) to its bankruptcy petition and because C-Bass, in its motion to abandon property, abandoned to U.S. Bank as the "Owner/Trustee" the asset described as the Fieldstone Investment Trust Series 2005-2. There are, however, no specific allegations against U.S. BanCorp or U.S. Bank Trust Company, National Association in the complaint. Rather, the trustee seeks declaratory judgments against them along with the other defendants in counts II and IV of the complaint. For the reasons discussed above these counts have been dismissed and there are no other outstanding claims against U.S. BanCorp or U.S. Bank Trust Company, National Association.

Other Grounds for Dismissal

There may be other arguments for dismissing the complaint as well, including the effect of the debtors' waiver of all claims against HSBC in the Land Court action, but as the defendants have not raised them, I need not address the other potential deficiencies in the trustee's complaint at this time.

Remainder of page left blank

**Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is granted as to all counts of the complaint.

A separate order will enter.

Dated: January 9, 2012

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   James O'Connor
Nickless, Phillips and O'Connor
Fitchburg, MA
Counsel for plaintiff, David M. Nickless, Chapter 7 trustee

Young Han
Prince Lobel Tye LLP
Boston, MA
Counsel for all defendants